David C. Potts, Bar #030550
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone:  (602) 263-4547
Fax:  (602) 200-7829
dpotts@jshfirm.com

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Eli Cohen, | No. 3:24-cv-08046-DLR |
| Plaintiff, | **Defendants' Reply In Support of Motion to Dismiss Plaintiff's First Amended Complaint** |
| v. | |
| Flagstaff Arts and Leadership Academy, Inc. a political subdivision of the State of Arizona; Andy Bessler, former President and Secretary of the Board of Directors of Flagstaff Arts and Leadership Academy, Inc; James Yih, former President of the Board of Directors of Flagstaff Arts and Leadership Academy, Inc.; Kyle Winfree, former Vice President of the Board of Directors of Flagstaff Arts and Leadership Academy, Inc.; Jason Crawley, former employee of Flagstaff Arts and Leadership Academy, Inc.; and Kara Kelty, employee of the Board of Directors of Flagstaff Arts and Leadership Academy, Inc., | |
| Defendants. | |

Defendants, by and through counsel undersigned, hereby reply in support of their Motion to Dismiss Plaintiff's First Amended Complaint.

## I.    DEFENDANTS COMPLIED WITH LOCAL RULE 12.1(C).

Plaintiff alleges that Defendants did not comply with Local Rule 12.1(c). Plaintiff is wrong. As Plaintiff concedes in the Motion, counsel for Defendants sent a letter to Plaintiff's counsel on May 22, 2024. A copy is attached as Exhibit 1. This letter outlined

117298476.1

the basis for Defendants' Motion to Dismiss in detail. In response, Plaintiff amended his Complaint. *See* First Amended Complaint (Doc. 16). These amendments counter some arguments raised in the letter, but the actual changes to the legal claims made by Plaintiff, aside from the removal of one claim, are minimal. *See* Redlined First Amended Complaint (Doc. 15-1), at pgs. 17–25. Given this relative lack of changes, Defendants moved to dismiss, making the arguments raised in the letter.

This is the process contemplated by Local Rule 12.1(c). Plaintiff's Complaint was deficient. Counsel for Defendants sent a letter to Plaintiff's counsel detailing why it was deficient, and Plaintiff amended his Complaint, but failed to cure those deficiencies. As Local Rule 12.1(c) itself states, conferral is necessary to determine whether the parties are "unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party." Local Rule 12.1(c) does not require that Defendants' counsel confer repeatedly about why these new amendments fail to cure the issues raised in that initial correspondence. Defendants complied with Local Rule 12.1(c).

## II.    LEGAL ARGUMENT

### A.    Plaintiff's § 1983 claim fails.

#### 1.    *FALA's Board members are not state actors under* Caviness.

§ 1983 applies only to those acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia" – in other words, state actors. In *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806 (9th Cir. 2010), the Ninth Circuit held that an Arizona charter school was not a state actor subject to liability under § 1983 in its capacity as an employer. *Caviness* controls here, and Plaintiff's § 1983 claim should be dismissed.

Plaintiff claims, Defendants "overstate" the significance of *Caviness*, as the statutory framework for Arizona charter schools has changed. Now, Plaintiff contends, the Department of Education "has the power to investigate and discipline 'noncertificated

117298476.1

persons,'" charter schools must conduct a search of a prospective employee on the education information system before hiring, and charter schools must "collect and maintain information about each teacher's educational and teaching background and either post it on their website or make such information available for inspection." Plaintiff's argument, succinctly stated in his Response, is that "the State has exercised significantly more control over charter schools' operations, rendering them state actors."

Plaintiff asks this Court to ignore binding Ninth Circuit precedent. *Caviness* addressed the very arguments that Plaintiff is making now. For example, in *Caviness*, the Ninth Circuit acknowledged that "[c]harter school employees must undergo finger-printing and background checks, and charter schools may not employ teachers who have been convicted of certain crimes." 590 F.3d at 809. It also held that the regulation of personnel matters in charter schools did not render them state actors. *Id.* at 816–17. As stated in *Caviness*, "[e]ven when the state has the power initially to review the qualifications of an employee selected by the school, such regulation is not sufficient to make the school's employment-related actions those of the state." *Id.* at 817–18 (cleaned up).

*Caviness* is no outlier. The fact that a private entity is regulated by the state and provides traditionally public functions has never been enough to subject that entity to liability under § 1983. In *Rendell-Baker v. Kohn*, for example, the Supreme Court held that a nonprofit school was not a state actor for purposes of § 1983 even though most of its funding came from the state and it had to comply with "detailed regulations concerning matters ranging from recordkeeping to student-teacher ratios." 457 U.S. 830, 832–3 3 (1982). And in *Jackson v. Metropolitan Edison Co.*, the Supreme Court held a utility company was not a state actor when it terminated a customer's power even though it was a "heavily regulated" public utility with a partial monopoly. 419 U.S. 345, 351–52 (1974).

Plaintiff's premise is that, once a private entity is subject to a certain level of regulation, it becomes a "state actor" for any and all purposes under § 1983. That is not the

117298476.1

1    law. "Even extensive government regulation of a private business is insufficient to make

2    that business a state actor if the challenged conduct was 'not compelled or even influenced

3    by any state regulation.'" *Caviness*, 590 F.3d at 806 (quoting *Rendell-Baker*, 457 U.S. at

4    841–42). There is no allegation that Plaintiff's termination was "compelled or even

5    influenced by any state regulation," and, as such, Mr. Yih, Dr. Winfree, and Mr. Bessler

6    are not state actors, so Plaintiff's § 1983 claim fails.

7

8               *2.*      *Plaintiff's "public function" argument fails as a matter of law.*

9            In the alternative, Plaintiff argues that various other allegations contained in

10   his First Amended Complaint are sufficient to render FALA's Board members as state

11   actors for purposes of § 1983. These arguments fail.

12          First, Plaintiff argues that he alleges that Defendants "engaged in a public

13   function," and that "Defendants were engaged in a public function when facilitating open

14   Board meetings and making decisions regarding the School's operations." As a result,

15   because Plaintiff alleges that he was terminated in retaliation for statements made in open

16   meetings, FALA's Board members are state actors for that purpose. Again, this is

17   addressed in *Caviness*. In *Caviness*, the Ninth Circuit held that the fact that charter school

18   boards are "political subdivisions" for purposes of Arizona's Open Meetings Act "does not

19   help Caviness here" and "even if we had determined that an Arizona charter school was a

20   political subdivision of Arizona for purposes of suits under the Fourteenth Amendment,

21   such a determination would not resolve the question whether the state 'was sufficiently

22   involved in causing the harm to plaintiff' such that we should treat [the charter school] as

23   acting under color of state law." *Caviness*, 590 F.3d at 814.

24

25          In fact, Plaintiff's conception of a "public function" is wrong. To satisfy the

26   public function test, the function at issue "must be both traditionally and exclusively

27   governmental." *Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002). But, under *Rendell-Baker*,

28   "the question is whether the function performed has been traditionally the *exclusive*

prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (emphasis in original). Board meetings conducted in an open fashion are by no means the "exclusive prerogative of the State" – if they were, homeowners' and condominium associations would be state actors subject to § 1983. *See* A.R.S. § 33-1804 (requiring open meetings for homeowners' associations) *and* A.R.S. § 33-1248 (same for condominium associations). "Facilitating open Board meetings and making decisions regarding the School's operations" is not a public function, and *Caviness* does not hold that it is.

Finally, Plaintiff alleges that he "had a termination hearing because as a government employee, he had a right to due process." This exact argument was made in *Caviness*; the plaintiff there claimed that he "was a tenured certified teacher entitled to the due process rights set forth in Arizona's statutes" and that, because he was provided those rights, the charter school necessarily acted under the color of state law. But the fact that the charter school implemented certain employment procedures "does not, without more, give rise to the inference that [the plaintiff] had a state-recognized status that gave him legal and constitutional entitlements to such procedures, or to further the inference that [the charter school] was legally obligated to provide them." *Caviness*, 590 F.3d at 816, n.7.

This epitomizes Plaintiff's claims. Plaintiff admits Defendants provided Plaintiff with a termination hearing and addressed the issues with his employment in a public setting. By doing this openly and providing Plaintiff with this level of process, Plaintiff alleges, wrongly, that Defendants must be state actors. But as stated in *Caviness*, the fact that a charter school implemented employment procedures consistent with public schools does not render the charter school a state actor for purposes of § 1983.

3.    *Plaintiff's "joint action" argument fails as a matter of law.*

Plaintiff next alleges that "Defendants conspired with Dr. Diaz, in his capacity as a state actor, to violate Plaintiff's due process and free speech rights." Dr. Rene Diaz served as the arbitrator in Plaintiff's termination hearing. *See* First Amended

117298476.1

Complaint (Doc. 16) at ¶ 81. Plaintiff alleges, upon information and belief, that Dr. Diaz "was employed and/or was an agent of the State of Arizona or a political subdivision of the State of Arizona."[1] Even if assumed to be true, this does not turn Defendants into state actors. Plaintiff concedes that "[t]he Board appointed Dr. Rene Diaz to serve as the hearing officer" in his termination hearing. This is, as argued above, not a public function.

Moreover, even if Dr. Diaz were employed by the State at the time of the hearing, this claim arises out of Dr. Diaz's performance of his duties as a private arbitrator, not a state employee. A person acts under color of law when he "exercises power possessed by virtue of state law and made possible only because the wrongdoing is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (cleaned up). The actions of a state employee must also be under "pretense" of some state law, and that "pretense" is lacking if the wrongful act is not in any way related to the performance of the duties of the state employee. *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 479 (9th Cir. 1991).

There is no allegation here that Dr. Diaz acted under the "pretense" of state law or was "clothed with the authority of state law." Dr. Diaz was working in his own private capacity as an arbitrator. This is quite different from *Adickes* and *Dennis*, two cases cited by Plaintiff in which private actors conspired with the police to arrest the plaintiff or bribed a judge to get an injunction against another party. As such, Plaintiff has not alleged "joint action" such that Defendants are subject to liability under § 1983.

4.   *Plaintiff's "government compulsion/nexus" argument fails as a matter of law.*

Plaintiff alleges that he can maintain a § 1983 claim against Defendants because "the coercive influence or significant encouragement of the state effectively converts a private action into a government action." *Kirtley v. Rainey*, 326 F.3d 1088, 1094 (9th Cir. 2003). The basis for this is that Plaintiff alleges that FALA works with Coconino

---

[1] FALA does not believe this to be true, but it is assumed to be true for purposes of evaluating the Motion to Dismiss.

117298476.1

Community College and Arizona State School for the Deaf and Blind to provide some student services. Plaintiff further alleges that "[t]he Arizona State Board of Education, Arizona State Board for Charter Schools and/or other government agencies have the power to control, direct, and manage FALA's operations of the School." *See* First Amended Complaint (Doc. 16) at ¶¶ 17–20.

None of this has anything directly to do with Plaintiff's claim. Plaintiff does not allege that any of these entities encouraged or participated in the termination of his employment. Instead, he claims only that FALA is "entwined" with these entities such that Defendants become state actors.

This yet another argument addressed and foreclosed by *Caviness*, which addressed that Arizona charter schools must be "sponsored" by either "a school district governing board, the state board of education or the state board for charter schools." *Caviness*, 590 F.3d at 809 (9th Cir. 2010). *Caviness* noted that there was no evidence that, with respect to the plaintiff's employment claims, that the charter school "acted in concert or conspired with state actors, was subject to government coercion or encouragement, or was otherwise entwined or controlled by an agency of the State." *Id.* at 811. The same is true here. There are no allegations that any state actor that FALA was "entwined" with or "controlled" by had anything to do with the termination of Plaintiff's employment, and, as such, his § 1983 claim fails.[2]

**B.** **Plaintiff failed to properly serve his notice of claim, so his state law claims against FALA and Andy Bessler should be dismissed.**

The parties mostly agree on the salient facts here: Plaintiff sent a copy of his notice of claim, by e-mail, to counsel for Defendants, who was authorized to accept service. Months later, when counsel for Plaintiff sent over a corrected acceptance of service,

---

[2] As argued in the Motion to Dismiss, if the § 1983 claim is dismissed, dismissal without prejudice of the supplemental claims is appropriate. *See, e.g., Proctor v. Riley Industries, Inc.*, 579 F. Supp. 3d 1127, 1133 (D. Ariz. 2022) (dismissing state law employment claims without prejudice upon dismissal of the plaintiff's federal claims).

1   counsel for Defendants did not execute it, as he did not believe his authorization to accept

2   service lasted that long. The only question is whether service by e-mail is sufficient for a

3   notice of claim.

4           A.R.S. § 12-821.01(A) requires that claims be filed with the person or

5   persons authorized to accept service "as set forth in the Arizona rules of civil procedure."

6   Claimants must strictly comply with the notice of claim statute, and substantial compliance

7   is insufficient. *Simon v. Maricopa Medical Center*, 234 P.3d 623, 631 (Ariz. 2010). Actual

8   notice, similarly, does not excuse failure to comply with statutory compliance. *Falcon ex*

9   *rel. Sandoval v. Maricopa County*, 144 P.3d 1254, 1256 (Ariz. 2006). This can lead to

10  harsh results; in *Falcon*, for example, the Arizona Supreme Court held that service of the

11  notice of claim upon only one member of the Maricopa County Board of Supervisors was

12  insufficient in light of the claimant's failure to comply with Arizona Rule of Civil

13  Procedure 4.1(i), which governed service of process upon the county.

14

15          The result here is harsh, but there is no precedent or authority under which a

16  notice of claim may be served by e-mail. To the extent that the Arizona Rules of Civil

17  Procedure speak to service by e-mail at all, they require consent or a court order to allow

18  such service, even if a party has already appeared in a case. *See* Ariz. R. Civ. P. 5(c)(2)(D)

19  (providing that a party may be served by electronic means other than an approved service

20  provider "if the recipient consents in writing to that method of service or if the court orders

21  service in that manner"). As a result, Plaintiff failed to serve a valid notice of claim, and

22  his state law claims against FALA and Andy Bessler should be dismissed.

23

24  **C.**      **Plaintiff's defamation claims are barred by the statute of limitations.**

25          The statute of limitations for defamation is one year, A.R.S. § 12-541(1), and

26  generally "begins to run on the date of the publication of the defamatory material." *Clark*

27  *v. Airesearch Mfg. Co. of Arizona, Inc.*, 673 P.2d 984, 985 (Ariz. App. 1983). Nearly all of

28

117298476.1

the statements giving rise to defamation claims occurred more than a year before he filed his Complaint, so, unless the discovery rule applies, those claims are barred.

Plaintiff claims that "the Court may disregard Defendants' arguments regarding the discovery rule as they never conferred with Plaintiff about those arguments before filing the Motion." This is false; Defendants' LR 12.1(c) letter cites *Clark*, which is a case about the general inapplicability of the discovery rule in the defamation context.

With respect to substance, Plaintiff relies on *Dube v. Likins*, a defamation case in which the Court did apply the discovery rule. But, in *Dube*, the plaintiff discovered, through litigation, that letters that he believed to be defamatory were written about him. These were the very type of "particularly secretive" publications that could lead to the application of the discovery rule. 167 P.3d 93, 109 (Ariz. App. 2007). Here, though, the statements that Plaintiff alleges were defamatory are nearly all public – statements made to law enforcement, at Board meetings, during his termination hearing, and so on. Even in his Response, Plaintiff does not identify any specific statements that were discovered after their publication, saying only he discovered "many" statements well after the fact. As a result, Plaintiff's defamation claims, aside from those arising from the allegations in ¶¶ 96 – 122 of Plaintiff's First Amended Complaint, are barred by the statute of limitations.

**D.    Almost all of the alleged defamatory statements are absolutely privileged under *Ledvina v. Cerasani* and *Yeung v. Maric*.**

Plaintiff also concedes that many of his alleged statements are absolutely privileged. For example, rather than substantively respond to Defendants' argument that Dr. Winfree's alleged report to law enforcement is absolutely privileged under *Ledvina*, he concedes that the allegation does not support his defamation claim. But with respect to the absolute privilege afforded to judicial and quasi-judicial proceedings, Plaintiff claims that Defendants "take contradictory positions about the significance of the termination hearing (i.e., they claim the hearing was a judicial/quasi-judicial act for purposes of the defamation claim, but a private act for purposes of the § 1983 claim.)"

117298476.1

1    There is no contradiction here, and *Yeung v. Maric* is clear as to why. *Yeung*

2    is not a case about absolute privilege in the context of traditional litigation; it is a case about

3    the application of the judicial privilege in the case of arbitration proceedings. 232 P.3d

4    1281, 1285 (Ariz. App. 2010). The Court of Appeals made clear that "arbitrators in private,

5    contractual arbitrations exercise 'quasi-judicial functions'" and are protected by absolute

6    immunity. *Id.* (quoting *Craviolini v. Scholer & Fuller Associated Architects,* 357 P.3d 611,

7    613 (Ariz. 1961)). There is no contradiction; private arbitrations are both quasi-judicial and

8    private. The same is true of the termination hearing in this case.

9

10    Plaintiff further alleges that, even if the statements made in connection with

11    his hearing are absolutely privileged, they "are no longer privileged when repeated in a

12    non-privileged setting," relying on *Green Acres Trust v. London*, 688 P.2d 617 (Ariz.

13    1984). That is not what *Green Acres Trust* said, though. In *Green Acres Trust*, the Arizona

14    Supreme Court held that, in order for the absolute privilege to apply to extra-judicial

15    communications, the content and manner of extra-judicial communications "must bear

16    'some relation to the proceeding.'" *Id.* at 622. In that case, the "press conference" in

17    question did not "repeat" anything; the press conference was held "preliminary to the

18    initiation of a class action." *Id.* at 619. Likewise, in *Donahue v. Arpaio* – also cited by

19    Plaintiff – the court held that "statements about filing the civil RICO complaint and

20    republication of the allegations of the complaint are absolutely privileged as germane to

21    the litigation." *Donahue v. Arpaio*, 869 F. Supp. 2d 1020 1062–63 (D. Ariz. 2012). In any

22    event, mere repetition of absolutely privileged allegations does not extinguish the privilege.

23

24    Here, the statements that Plaintiff alleges were made either to law

25    enforcement or in connection with his termination hearing are absolutely privileged. That

26    includes the statements that Dr. Winfree made to law enforcement, the statements by

27    witnesses at Plaintiff's termination hearing, and Mr. Yih's statements regarding the

28    outcome of the termination hearing. Any defamation claims arising out of these are barred.

10

117298476.1

### E.   The remaining defamatory statement -the letter by Jonathan McIntyre – is a statement of opinion that cannot give rise to a defamation claim.

Almost all of Plaintiff's defamation claim is either time-barred or based upon an absolutely privileged statement. To the extent it is based upon statements made in public meetings prior to March 5, 2023, the claim is barred by the statute of limitations. To the extent it is based upon reports to law enforcement or statements made in connection with Plaintiff's termination hearing, it is barred by absolute privilege. That leaves only two avenues for Plaintiff's defamation claim.

The first of these is Plaintiff's allegation, "[u]pon information and belief" that "the Board either sent or directed a third-party to send an anonymous letter to Cohen's prospective employer(s) characterizing him as a 'criminal' and urging the prospective employer not to hire him." *See* First Amended Complaint (Doc. 16) at ¶ 125. The details of this correspondence are not clear, but, at the pleading stage, Defendants concede that this is sufficient to state a defamation claim.

The second is the statement in which an employee wrote that Plaintiff "neglected or destroyed" FALA and that he "never met [Plaintiff], I hope I never do." *See* First Amended Complaint (Doc. 16) at ¶ 118. These statements of opinion cannot give rise to a defamation claim. *Takieh v. O'Meara*, 497 P.3d 1000, 1006 (Ariz. App. 2021).

Given this, Plaintiff's defamation claim should be dismissed except to the extent it is premised upon the allegation that Defendants sent correspondence to a prospective employer referring to Plaintiff as a criminal as alleged in ¶ 125.

## III.   CONCLUSION

Plaintiff cannot escape *Caviness*, and, without a federal claim, the state law claims should be dismissed. In any event, Plaintiff failed to properly serve a notice of claim and his defamation claims are, with one exception, all barred. As such, Plaintiff's First Amended Complaint should be dismissed.

117298476.1

1

DATED this 3rd day of July, 2024.

2

JONES, SKELTON & HOCHULI, P.L.C.

3

4

5                           By /s/David C. Potts
                               David C. Potts
6                              40 N. Central Avenue, Suite 2700
                               Phoenix, Arizona 85004
7                              Attorneys for Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

117298476.1