WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eli Cohen,<br><br>    Plaintiff,<br><br>v.<br><br>Flagstaff Arts and Leadership Academy Incorporated, et al.,<br><br>    Defendants. | No. CV-24-08046-PCT-DLR<br><br>**ORDER** |

Before the Court is the Defendants' motion to dismiss (Doc. 18) Plaintiff Eli Cohen's First Amended Complaint ("FAC") (Doc 16). The motion is fully briefed. (Docs. 19, 20.) Neither party requested oral argument. For the following reasons, the Court grants in part and denies in part the motion to dismiss.

**I. Background**[1]

Cohen is a former employee of Flagstaff Arts and Leadership Academy, Inc. ("FALA"). (Doc. 16 ¶ 35.) FALA is an Arizona charter school governed by a Board of Directors ("Board"). (*Id.* ¶¶ 2–4.) This case arises from a dispute about the propriety of Cohen's termination from his position at FALA and the Board's conduct leading up to and following his termination. (*See generally id.*) Defendants are FALA; Andy Bessler, former President and Secretary of the Board; James Yih, former President of the Board; Kyle Winfree, former Vice President of the Board; Jason Crawley, a former FALA employee;

---

[1] The following facts are drawn from the allegations in the FAC, which the Court accepts as true for the purposes of this order. *See infra* Part III.

and Kara Kelty, a current FALA employee.[2] (*Id.* ¶¶ 6–9.) Arizona charter schools, like FALA, are statutorily characterized as "public schools" and are subject to Arizona's Open Meeting Law. Ariz. Rev. Stat. Ann. ("A.R.S.") §§ 15-101(4), 38-431.01(A); Ariz. Op. Att'y Gen. No. I95-10, 1995 WL 870820, at *3–*4 (1995).

On July 1, 2022, Cohen executed a three-year employment contract with FALA to serve as its Executive Director. (Doc. 16 ¶ 35.) Shortly thereafter, several Board members began demanding to be included in meetings they would not traditionally attend. (*Id.* ¶ 38.) Perturbed by the Board's behavior, Cohen began speaking out and expressing concern about the legality of the Board's conduct. (*Id.* ¶¶ 42–43, 50.) He even brought his concerns directly to the Board at two separate Board meetings. (*Id.* ¶¶ 48, 51.)

After the second Board meeting, Yih and Winfree sent Cohen a letter on the Board's behalf "formally reprimanding him for 'undermining the Board's efforts by questioning the legality of the Board's actions'" and warning him to consider his words and actions carefully. (*Id.* ¶ 52.) In response, on December 1, 2022, Cohen filed a formal grievance against the Board and FALA, containing allegations of harassment, slander, due process violations, open meeting law violations, and FALA policy violations. (*Id.* ¶ 53.) The letter further alleged that Winfree accused Cohen of rendering FALA "a sinking ship on fire"; that Yih accused Cohen of engaging in inappropriate behavior and performing his job poorly; and that Bessler stated or implied that Cohen jeopardized the health and safety of FALA students. (*Id.* ¶¶ 55–57.)

Later that month, Cohen again raised his concerns at a Board meeting and called on the Board to resign due to their conduct. (*Id.* ¶ 58.) The next day, the Board administratively reassigned Cohen to remote work. (*Id.* ¶ 59.) The Board then announced this reassignment via email to the entire FALA community. (*Id.* ¶ 65.)

Winfree went on to make several more public accusations. He claimed Cohen conspired to kidnap his daughter and filed a police report to that effect. (*Id.* ¶¶ 61–62.) He claimed that Cohen failed to report child abuse, stole school funds, and falsified records.

---

[2] The Court will hereinafter use "Defendants" to refer to all the defendants collectively and will refer to individual defendants by their names where appropriate.

(*Id.* ¶ 67.) Finally, Winfree reported to the Arizona State Board of Education that Cohen suppressed efforts to report a FALA employee's mismanagement of funds, resulting in the Board of Education initiating a formal investigation. (*Id.* ¶ 68.)

In January 2023, the Board submitted a Notice of Intent to Dismiss and Statement of Charges ("Notice") to Cohen, accusing him of disclosing confidential information, embezzling school funds, violating his administrative reassignment to remote work, mishandling finances, overreaching his authority, and mishandling contracts. (*Id.* ¶ 75.) The Notice also informed Cohen that he was entitled to due process and could request a hearing in front of a hearing officer. (*Id.* ¶ 79.) Cohen requested a hearing, and the Board appointed Dr. Rene Diaz to serve as the hearing officer. (*Id.* ¶ 81.)

During the termination hearing, Crawley testified that Cohen failed to timely pay certain invoices that Cohen alleges he did pay. (*Id.* ¶ 84.) The Board also submitted a written statement from Kelty that falsely accused Cohen of failing to comply with state and federal laws governing school administration and failing to provide teachers necessary safety training. (*Id.* ¶ 88.) At the close of the hearing, Cohen submitted a written statement, citing evidence demonstrating that the employees' testimony was untrue. (*Id.* ¶ 91.) Dr. Diaz thereafter issued findings of fact and recommended the Board terminate Cohen's employment. (*Id.* ¶ 92.)

The Board adopted Dr. Diaz's recommendation in full and terminated Cohen's employment. (*Id.* ¶ 107.) Yih publicized the contents of the termination hearing and the findings of fact during an open Board meeting, and the Board later posted the findings to FALA's website. (*Id.* ¶¶ 96, 108.) Following Cohen's termination, Winfree read a letter written by a third party aloud at a Board meeting, and the letter accused Cohen of neglecting or destroying FALA. (*Id.* ¶ 118.) When Cohen sought new employment, the Board sent a letter to his prospective employer calling Cohen a "criminal" and urging the employer not to hire him. (*Id.* ¶ 125.) As a result, that prospective employer rescinded its employment offer. (*Id.* ¶ 127.) Cohen further alleges that he lost other employment

opportunities "due to efforts by the Board to interfere with Cohen's business expectancy." (*Id.* ¶ 129.)

In response to the Board's actions, Cohen filed the present suit. Cohen pleads four counts: (1) wrongful termination against FALA, (2) retaliation in violation of 42 U.S.C. § 1983 against Yih, Winfree, and Bessler, (3) defamation against all Defendants, and (4) intentional interference with contract and/or business expectancies against FALA. (Doc. 16 at 15–18.) Defendants move to dismiss all counts on Rule 12(b)(6) grounds. (Doc. 18.)

## II.  Adequacy of the Meet and Confer

Before turning to the merits of the motion, the Court will address a preliminary issue raised by Cohen: the adequacy of the parties' efforts to meet and confer on the motion to dismiss. Local Rule 12.1(c) provides that no motion to dismiss for failure to state a claim will be considered

> unless the moving party includes a certification that, before filing the motion, the movant notified the opposing party of the issues asserted in the motion and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party.

The Rule permits litigants to comply through "personal, telephonic, or written notice," but it contemplates *engagement* between the parties in good faith—that is, it expects that the parties will have a substantive consultation with one another. LRCiv. 12.1(c). Additionally, the court issued its own standard order to the parties (Doc. 5), which imposes more expansive meet and confer requirements and discourages motions to dismiss "if the perceived defects can be cured in any part by filing an amended pleading." (*Id.*)

It is not entirely clear what sort of consultation occurred here. Defense counsel, David Potts, sent a letter to Cohen's counsel, Alden Thomas, outlining what he believed to be "incurable" issues in the Complaint. (Doc. 20-1 at 1–4.) Thomas maintains that she responded to the letter and engaged with the defense[3]; Potts states that Thomas's response was simply to file the FAC. (Docs. 19 at 2; 20 at 2.) Before Thomas filed the FAC,

---
[3] Ms. Thomas has not provided the Court with any documentation of a responsive letter.

- 4 -

however, Potts moved to dismiss the original complaint. (Doc. 14.) Thomas then filed the FAC, adding several new allegations that are responsive to some of defense counsel's objections. (*See* Doc. 16.) Potts filed the present motion, generally raising the same arguments as the original letter and the first motion to dismiss, without initiating another attempt to meet and confer. (Doc. 20 at 2.)

Whatever the case, the correspondence here "does not comport with the purpose of the rule." *Garcia v. JPMorgan Chase Bank NA*, No. CV-16-01023-PHX-DLR, 2018 WL 1570249, at *4 (D. Ariz. Mar. 30, 2018). Still, the Court denies Cohen's request to strike the motion summarily. "Courts in this district occasionally overlook this procedural shortcoming, especially when doing so causes no prejudice, or when ordering the movant to file a new motion after consultation would be futile." *Id.* Such is the case here. Potts's letter makes abundantly clear that he did not believe any amendment could cure the issues with the Complaint. (Doc. 20-1 at 1.) Further, the pending motion to dismiss raises the same arguments raised in both the letter and the first motion to dismiss. And it is apparent from Cohen's response to the motion—which aggressively opposes it on the merits—that any consultation would have been futile. Thus, the Court will excuse the procedural issue and evaluate the motion on its merits.

### III. Legal Standard

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include sufficient facts to demonstrate that the claim is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When analyzing the sufficiency of a complaint, the Court accepts all well-pled factual allegations as true, construes those allegations in a light most favorable to the non-moving party, and draws all inferences in the non-moving party's favor. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Still, the Court is not required "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**IV. Analysis**

    **a. Cohen plausibly alleges a claim for retaliation in violation of the First Amendment, but he fails to allege state action with regard to the alleged Due Process violation.**

Cohen brings 42 U.S.C. § 1983 claims against Yih, Winfree, and Bessler for (1) retaliating against him after he exercised his First Amendment free speech right and (2) depriving him of his property interest in his job without due process as required by the Fourteenth Amendment. (Doc. 16 ¶¶ 151, 156–57.) Section 1983 is a "mechanism for vindicating federal statutory or constitutional rights." *Stilwell v. City of Williams*, 831 F.3d 1234, 1240 (9th Cir. 2016). It provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege: "(1) the defendants acted under color of law, and (2) their conduct deprived the plaintiff of a constitutional or statutory right." *Stein v. Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011) (quotation omitted). "Dismissal of a § 1983 claim following a Rule 12(b)(6) motion is proper if the complaint is devoid of factual allegations that give rise to a plausible inference of either element." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015).

Defendants' motion focuses only on the first element, arguing that Cohen fails to plausibly allege that there was any "state action." (Doc. 18 at 6–7.) *See United States v. Price*, 383 U.S. 787, 794 n.7 (1966) ("In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment.") Cohen first argues that FALA is a state actor because of the statutory scheme governing Arizona charter schools. (Doc. 19 at 8–10.) Alternatively, if FALA is a private actor, he argues that their actions can still be attributed to the state. The Court addresses each argument in turn. (*Id.* at 11–13.)

### i. Cohen's "statutory scheme" theory of state action fails.

Cohen argues that FALA is a state actor because of the state's statutory treatment of charter schools as "public schools" and "political subdivisions." (Doc. 19 at 8.) Defendants counter that this argument is foreclosed by *Caviness v. Horizon Community Learning Center*, 590 F.3d 806 (9th Cir. 2010). (Doc. 18 at 7.) Cohen responds that *Caviness*'s "rationale no longer applies because Arizona's statutory framework has since fundamentally changed, granting the State substantially more oversight/control over charter schools[.]" (Doc. 19 at 10.)

In *Caviness*, the Ninth Circuit affirmed dismissal of the plaintiff's § 1983 claim against a charter school (his former employer). 590 F.3d at 808. The court held that "reliance on Arizona's statutory characterization of charter schools as 'public schools' does not itself" make the school a state actor in the employment context. *Id.* at 814. This is so because "a state's statutory characterization of a private entity as a public actor for some purposes is not necessarily dispositive with respect to all of that entity's conduct." *Id.* The court distinguished the Sixth Circuit's decision that Ohio charter schools are political subdivisions of the state for Fourteenth Amendment suit purposes because Ohio's statutory scheme told the court nothing about Arizona charter schools. *Id.* The plaintiff could not merely rely on Arizona's statutory characterization of charter schools to demonstrate that a charter school is a state actor. *Id.*

Cohen contends that *Caviness* no longer controls because the statutes applicable to charter schools have since been amended, and the statutory scheme has fundamentally changed. (Doc. 19 at 9.) He likens Arizona's current scheme to Ohio's. (*Id.*) True enough, some new provisions have been added and some existing statutes have been amended. But the provisions of Arizona statutes relating to charter schools on which the *Caviness* decision relied have not fundamentally changed. Much of the statutory language quoted in *Caviness* remains the same. *Compare, e.g.*, *Caviness*, 590 F.3d at 809–10, *with* A.R.S. §§ 15-101, 15-183.

1    Moreover, Cohen fails to explain why the provisions that have been added would
2  change this outcome. For instance, he cites to A.R.S. § 15-189.06(B), which requires
3  charter schools to adopt policies regarding principal evaluations[4] in public meetings. (Doc.
4  19 at 10.) But he does not allege that any of the conduct at issue took place at a meeting
5  called pursuant to this section, nor does he allege that he was terminated as a result of
6  policies adopted at such a meeting. There is no connection between the newer provisions
7  of Arizona law and this case.

   And even if this expanded statutory scheme gives the state more oversight and control over charter schools, that oversight still does not transform them into state actors. Indeed, the *Caviness* court acknowledged that even if it found that charter schools were political subdivisions for the purposes of Fourteenth Amendment suits that "determination would not resolve the question whether the state 'was sufficiently involved in causing the harm to plaintiff' such that we should treat [a charter school's sponsor] as acting under color of state law." *Caviness*, 590 F.3d at 814 (quoting *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 506 (9th Cir. 1989)). *Caviness* still controls, and Arizona's statutory characterization of charter schools does not make FALA or the Board a state actor as a matter of law.

### ii. Cohen plausibly alleges that some of the Board's conduct can be attributed to the state.

Cohen alternatively argues that the Board's conduct can be considered state action in this case. The Court presumes that private conduct does not constitute state action; to be considered state action, "something more" than just private conduct must be present. *Sutton v. Providence St. Joesph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)). Though courts have no "specific formula" to determine whether "something more" is present, they generally consider four different factors: "(1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus." *Id.* at 835–36; *Howerton v. Gabica*, 708 F.2d 380, 383 (9th

---

[4] Cohen states that "principal" as used in the statute includes his position as Executive Director of FALA.

- 8 -

Cir. 1983); *see also Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974). Satisfaction of any one factor can be sufficient to consider the action "state action." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) *see also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96 ("What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity. . . . [N]o one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government."). Cohen argues that he has plausibly alleged that the conduct at issue satisfies each of the first three factors.

### 1. Public Function

"Under the public function test, 'when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.'" *Lee v. Katz*, 276 F.3d 550, 554–55 (9th Cir. 2002) (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966)). "That a private entity performs a function which serves the public does not make its acts state action." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). Thus, determining whether something is a "public function" is only the beginning of the inquiry; the Court must thereafter determine whether the function is traditionally and exclusively the prerogative of the state. *Id.*

Cohen identifies the particular government function here as "facilitating open Board meetings and making decisions regarding the School's operations." (Doc. 19 at 11.) *See Lee*, 276 F.3d at 555 n.5 ("It is important to identify the function at issue because an entity may be a state actor for some purposes but not for others." (quotation and citation omitted)). He provides sufficient support to demonstrate that facilitating public meetings serves a public function: the policy behind the applicable law is "to open the conduct of the business of government to the scrutiny of the public and to ban decision-making in secret." *Karol v. Bd. of Educ. Trs., Florence Unified Sch. Dist. Number One*, 593 P.2d 649, 651 (Ariz. 1979).

1    Defendants characterize the function at issue as hosting "Board meetings conducted in an open fashion." (Doc. 20 at 5.) They argue this function can't be a true public function because, if it were, homeowners' and condominium associations would similarly be subject to § 1983 liability despite being private organizations. (*Id.*) Not quite. Arizona charter schools are subject to Arizona's Open Meeting Law because they are "public bodies," and meetings of public bodies must be public. A.R.S. § 38-431(6); Ariz. Op. Att'y Gen. No. I95-10, 1995 WL 870820, at *3–*4 (1995). Homeowners' associations are private organizations. They are not subject to Arizona's Open Meeting Law. A different statute, however, requires them to allow all *members* of the association to attend association meetings. A.R.S. § 33-1804. Homeowners' associations hosting meetings are subject to state regulation; charter schools holding open meetings, on the other hand, are stepping into the shoes of the state government. Facilitating open meetings in accordance with Arizona's Open Meeting Law is traditionally and exclusively the prerogative of the state—no private organization acting privately is subject to this rule.

At least as it pertains to facilitating open meetings, Arizona charter school boards have been cloaked in state governmental authority with all the obligations and responsibilities of other public bodies that are subject to the same statute. Cohen has plausibly alleged that the Board used that State-granted power to retaliate against him for exercising his First Amendment rights. Still, this finding does not resolve whether the question of whether FALA and the Board were state actors when they terminated him, such that they could have deprived him of due process.

**2. Joint Action**

Cohen alleges that "the Board conspired with Dr. Diaz, in his capacity as a state actor," to deprive Cohen of due process. (Doc. 16 ¶ 94.) "A plaintiff can show joint action either by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *O'Handley v. Weber*, 62 F.4th 1145, 1159 (9th Cir. 2023) (quotation omitted). Joint action exists when the State "significantly involves itself in the private parties' actions and decisionmaking" in a

"complex and deeply intertwined process." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 753 (9th Cir. 2020) (quotations omitted).

The FAC alleges in conclusory fashion that Dr. Diaz is a state actor, but even assuming this conclusion were factually supported, the FAC does not plausibly allege a conspiracy between Dr. Diaz, FALA and/or the Board. (*See* Doc. 16 ¶¶ 81–82.) "The conspiracy approach to joint action requires the plaintiff to show a 'meeting of the minds' between the government and the private party to 'violate constitutional rights.'" *O'Handley*, 62 F.4th at 1159 (quoting *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983)).

Here, the FAC is devoid of any allegations suggesting that Dr. Diaz and the Board had any "meeting of the minds." Neither the Board's appointment of Dr. Diaz nor the allegation that he found in their favor at the conclusion of the hearing suggest a reasonable inference of conspiracy between the parties. This theory fails.

### 3.  Governmental Compulsion or Coercion

In support of his government compulsion theory, Cohen argues that the state and FALA are so entwined as to convert the Board's action into state action. *Kirtley*, F.3d at 1094 ("The compulsion test considers whether the coercive influence or significant encouragement of the state effectively converts a private action into a government action." (quotation omitted)). Cohen is essentially advancing the same argument the Court already determined to be foreclosed by *Caviness*, and thus, the Court will not consider it. Cohen fails to plausibly allege any state action regarding his termination, and thus he fails to plausibly allege that he was deprived of due process. Accordingly, Cohen may proceed on his § 1983 claim for retaliation in violation of the First Amendment, but he may not advance his § 1983 claim for the violation of his Due Process rights.

### b.  Cohen's state law claims survive dismissal.

#### i.  Thomas's email including a notice of claim and acceptance of service was adequate.

Defendants argue that the wrongful termination, defamation, and intentional interference with contract and/or business expectancies claims should be dismissed

because Cohen failed to properly file a notice of claim. (Doc. 18 at 8.) For any claim against a public entity, public school, or public employee, Arizona law requires the plaintiff to "file" his claim "with the person or persons authorized to accept service for the public entity, public school or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues." A.R.S. § 12-821.01(A). The purpose behind the rule is to put the entity on notice and give it an opportunity to resolve forthcoming claims. *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 492 (Ariz. 2007). Charter schools are public schools under Arizona law, and therefore, a notice of claim is a prerequisite to suit against a charter school, like FALA. A.R.S. § 15-101(4); *see UMB Bank, NA v. Parkview Sch., Inc.*, 523 P.3d 1261, 1264 (Ariz. Ct. App. 2023).

The parties don't dispute the relevant facts: On May 19, 2023, Thomas emailed Potts to ask whether he could accept service on behalf of the current Board and FALA, and he confirmed he could. (Doc. 18 at 5.) On July 7, 2023, Thomas emailed Potts, Bessler, and Winfree (and three others not named in this action) a notice of claim with an acceptance of service to execute. (Doc. 18-1 at 28.) Potts confirmed receipt but did not execute the acceptance of service. (Doc. 19-1 at 4.) Instead, he requested that Thomas provide an updated acceptance of service form, as some of the persons named on the form were no longer Board members. (*Id.*) She did not send a revised version, but she maintains that she properly filed the notice of claim as required by A.R.S. § 12-821.01. (Doc. 19 at 3.) In arguing otherwise, Defendants assert that the email notice is inadequate because "Arizona law specifically requires consent or a court order to allow service by e-mail." (Doc. 18 at 8–9.)

Defendants misread the notice of claim statute. *Lee v. State*, 182 P.3d 1169 (Ariz. 2008) is instructive. As *Lee* explained, "*filing* is not synonymous with *service* and . . . the reference to the Arizona Rules of Civil Procedure in the statute was modifying the phrase relating to who is authorized to accept service;" it was not modifying the word "file." *Bellis v. Navajo Cnty.*, No. CV-23-08125-PCT-JAT (ASB), 2024 WL 3202332, at *10 (D. Ariz.

June 27, 2024). The statute provides no "clearer legislative directive than the word 'file,'" so there is no "formal service" requirement. *Lee*, 182 P.3d at 1172–73; *see also Kenney v. City of Mesa*, No. 1 CA-CV 12-0377 A, 2012 WL 5499424, at *2 (Ariz. Ct. App. Nov. 13, 2012). Defendants do not contest that the notice of claim was sent to the appropriate representative; instead, they argue that the notice of claim cannot be emailed. A.R.S. § 12-821.01 contains no language stating that "filing" cannot be done by email, and the Court refuses to add a formal service requirement where none exists. Thus, Thomas's email sufficed as a notice of claim.

### ii. Cohen plausibly alleges that Defendants made unprivileged, defamatory statements within the statute of limitations.

Defendants put forth three additional arguments in favor of dismissal of Cohen's defamation claims: (1) some of the allegedly defamatory statements were made outside the applicable statute of limitations; (2) some of the allegedly defamatory statements are absolutely privileged; and (3) one of the allegedly defamatory statements is a statement of opinion. (Doc. 18 at 9–11.)

### 1. The statute of limitations for actions against a public entity or public employee, A.R.S. § 12-281, applies to Cohen's defamation claims.

Defendants and Cohen disagree about the applicable statute of limitations. Defendants assert that the statute of limitations for defamation, A.R.S. § 12-541, applies, while Cohen asserts that the statute of limitations for actions against a public entity or public employee, A.R.S. § 12-821, applies. (Docs. 18 at 9; 19 at 16–17.) Both statutes require a plaintiff to bring suit within one year after the cause of action accrues. The key difference is that the statutes have different approaches to the discovery rule.[5] When § 12-541 applies, the discovery rule applies only "in those situations in which the defamation is published in a manner in which it is peculiarly likely to be concealed from the plaintiff,

---

[5] The discovery rule tolls the statute of limitations period until the plaintiff discovers or reasonably should have discovered that the injury was caused by the defendant's conduct. *Flood Control Dist. of Maricopa Cnty. v. Gaines*, 43 P.3d 196, 202 (Ariz. Ct. App. 2002).

- 13 -

such as in a confidential memorandum or a credit report." *Clark v. Airesearch Mfg. Co. of Ariz., a Div. of Garrett Corp.*, 673 P.2d 984, 986 (Ariz. Ct. App. 1983). Whereas all causes of action under § 12-821 are subject to the discovery rule—no matter the circumstances. *See* A.R.S. § 12-821.01(B) (A "cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage.").

Section 12-821 applies because this is a claim against a public school and public employees. *See Dube v. Likins*, 167 P.3d 93, 103 (Ariz. Ct. App. 2007) (holding that § 12-821 statute of limitations, and consequently, the discovery rule, apply to all defamation claims against public entities and officials). Thus, defamatory statements Cohen did not and reasonably could not know about until within a year before the Complaint was filed are not barred. And without discovery, the Court cannot determine when Cohen discovered or should have discovered each of the allegedly defamatory statements. Thus, the Court declines to dismiss any of the defamation claims on a statute of limitations basis at this stage.

### 2. The statements made in Cohen's termination hearing are not absolutely privileged.

Defendants claim that Crawley's and Kelty's statements as witnesses at the termination hearing are absolutely privileged.[6] (Doc. 18 at 10.) Arizona law holds that statements by witnesses in judicial proceedings are absolutely privileged and cannot be used to form the basis of a defamation claim. *Yeung v. Maric*, 232 P.3d 1281, 1283 (Ariz. Ct. App. 2010) ("It is well established in Arizona that statements that would otherwise be actionable in defamation will 'escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at

---

[6] Defendants also seek dismissal of the defamation claim based on Winfree's accusation that Cohen conspired to kidnap his daughter because that statement was absolutely privileged as a report to law enforcement. (Doc. 18 at 10–11.) Cohen responds that that statement was included in the FAC to support his § 1983 and wrongful termination claims, not as a defamatory statement. (Doc. 19 at 15–16.) Because Cohen has clarified that that statement is not part of his defamation claim, the Court does not analyze whether that statement was privileged.

the expense of uncompensated harm to the plaintiff's reputation.'" (quoting *Green Acres Tr. v. London*, 688 P.2d 617, 620 (Ariz. 1984))). The policy behind this rule is to avoid the chilling effect that potential liability might have on a witness providing candid, truthful testimony. *See id.* The privilege has been expanded to cover witness statements in private arbitrations. *Id.* at 1285.

Reasoning that termination hearings, like arbitrations, are "quasi-judicial," Defendants ask the Court to apply the privilege to Crawley's and Kelty's statements. (Doc. 18 at 11.) The Court is not convinced immunity should apply here and cannot, without more information, determine that termination hearings are "sufficiently analogous to judicial litigation to warrant application of the privilege."[7] *Yeung*, 232 P.3d at 1286. In the absence of any allegations or legal support demonstrating that termination hearings at FALA are sufficiently judicial, it would be imprudent to apply the privilege—the use of which is already limited to narrow circumstances. *See Burns v. Davis*, 993 P.2d 1119, 1126 (Ariz. Ct. App. 1999) (Because of concern with the potential for abuse of a privilege, "a privilege's scope is generally limited."). Cohen's defamation claims against Crawley and Kelty stand.

### 3. The remaining challenged defamatory statement is actionable.

In their final challenge to the defamation claims, Defendants argue that one of the allegedly defamatory statements is an inactionable statement of opinion. To state a claim for defamation, a plaintiff must plausibly allege that (1) the defendant made a false statement; (2) the statement was published or communicated to someone other than the plaintiff; and (3) the statement tended to harm plaintiff's reputation. *Lundin v. Discovery Commc'ns Inc.*, 352 F. Supp. 3d 949, 960 (D. Ariz. 2018). A "false statement" is an "assertion of objective fact." *Yetman v. English*, 811 P.2d 323, 328 (Ariz. 1991). Thus, a

---

[7] For example, the FAC contains no allegations that Dr. Diaz administered oaths, required compulsory attendance of witnesses, or issued any subpoenas. Further, the FAC contains no allegations that there was any risk of perjury or contempt; that the proceeding was adversarial; or that there was any opportunity for cross-examination. These are the sorts of facts that the Court needs to analyze to determine whether the privilege applies. *See Burns v. Davis*, 993 P.2d 1119, 1127 (Ariz. Ct. App. 1999).

statement of opinion cannot be the basis for a defamation claim. *Burns*, 993 P.3d at 1129. "As a matter of law, a statement is not actionable if it is comprised of 'loose, figurative, or hyperbolic language' that cannot reasonably be interpreted as stating or implying facts 'susceptible of being proved true or false.'" *Takieh v. O'Meara*, 497 P.3d 1000, 1006 (Ariz. Ct. App. 2021) (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1 (1990)). But a statement of opinion that *implies* a false assertion of fact is actionable. *Turner v. Devlin*, 848 P.2d 286, 293 (Ariz. 1993).

Defendants argue that the statement Winfree read accusing Cohen of "neglect[ing]" or "destroy[ing]" FALA is an inactionable statement of opinion. The Court disagrees. The language employed may be hyperbolic, but it nevertheless implies that Cohen not only failed to satisfactorily perform his job duties but also damaged his employer in the process. It is either true or false that Cohen performed his job appropriately and correctly, and it is either true or false that his conduct damaged FALA. The statement is thus actionable.

**V.     Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Cohen may proceed on all his claims except the § 1983 due process claim, which the Court dismisses.[8]

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 18) is **GRANTED in part** and **DENIED in part.**

Dated this 24th day of January, 2025.

Douglas L. Rayes
Senior United States District Judge

---

[8] Cohen's request for leave to amend is denied because it does not comply with the Court's standard order (Doc. 5) and Local Rule 15.1(a).